UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| GARY W. HELMAN, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:10cv486 |
| SGT. BRUCE DUHAIME, TROOPER KRISTOPHER COFFEY, SGT. COREY CULLER and TROOPER STEVE SMELTZLEY, | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Sgt. Bruce Duhaime ("Duhaime"), Trooper Kristopher Coffey ("Coffey"), Sgt. Corey Culler ("Culler"), and Trooper Steve Smeltzley ("Smeltzley"), on July 9, 2012. The plaintiff, Gary W. Helman ("Helman"), filed his response on August 7, 2012, to which the defendants replied on August 27, 2010. Helman then filed a sur-response on September 9, 2012, to which the defendants filed a sur-reply on September 28, 2012.

For the following reasons, the motion for summary judgment will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a

trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

The following facts are supported by the defendants' evidence of record. On April 9, 2009, members of the Indiana State Police arrived at Helman's home to execute warrants for his arrest. Helman was at home, with his mother and brother, Michael Helman. Michael Helman spoke with an Indiana State Police officer, who explained that the police were there to arrest Helman. Michael Helman then returned to the house, spoke with Helman, and left the premises. According to affidavits of the officers, they were attempting to negotiate Helman's peaceful arrest but were unsuccessful at that time.

Around noon, United States Marshal Brent Cooper ("Cooper"), arrived at the scene. Helman went into his backyard to discuss the lawsuits Helman had filed in federal court with Cooper and Sgt. Duhaime, a defendant herein. The officers asked Helman if he was armed and asked him to lift up his shirt. Helman was wearing a .45 caliber, semi-automatic handgun at waist-level on his right-hand side. Duhaime told other members of the Indiana State Police that Helman was carrying a loaded firearm. Helman then handed some paperwork to the officers and returned to his house.

About six hours later, Helman left the house for a second meeting with police officers.

2

As Helman walked into his backyard, the Indiana State Police Emergency Response Team (ERT) moved behind Helman to prevent his return to the house. A police sniper was also positioned in a house overlooking Helman's backyard. To distract Helman, the ERT activated a flash bang device. The State Police officers then observed Helman turn, see the ERT, and attempt to draw his handgun. Multiple shots were then fired at Helman. After the shooting ceased, officers approached Helman and recovered a handgun from his waistband.

Helman was charged in state court with resisting law enforcement under Ind. Code § 35-44-3-3. At his guilty plea hearing, the presiding judge asked Helman whether he "did knowingly or intentionally forcibly resist, obstruct or interfere with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties and while committing said offense the person attempted to draw a deadly weapon?" Helman responded, "Yes, sir." Based on Helman's testimony, the court found him guilty of "Resisting Law Enforcement a Class D Felony".

Helman has now sued the defendant officers, alleging that they used deadly force against him in violation of the Fourth Amendment, Fourteenth Amendment and 42 U.S.C. § 1983. Helman alleges that as a result of being shot, he has incurred hospitalization and medical expenses, and that his injuries have left him permanently disabled.

In support of their motion for summary judgment, the defendants first argue that *Heck v. Humphrey* precludes Helman from bringing a § 1983 action. The defendants contend that Helman's claims directly undercut Helman's guilty plea to resisting arrest. It is well established that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Under *Heck*, a district court

must dismiss a § 1983 action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. Whether a claim is barred depends not only on abstract principles but also on whether the "specific factual allegations in [a plaintiff's] complaint" are "inconsistent with the facts upon which his criminal conviction" was based. *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006).

As noted, in his state criminal case for resisting arrest, Helman pled guilty to a Class D felony for resisting arrest under Ind. Code § 35-44-3-3 (recodified as Ind. Code § 35-44.1-3-1). Under this statute, a Class D felony for resisting arrest is committed when the person draws or uses a deadly weapon when resisting arrest.

However, in the allegations in his complaint, and also in his deposition, Helman states that he never drew or used his weapon when resisting arrest. Helman's complaint alleges that the officers shot him while "knowing that he merely held in his hands a cup of water and a cup of coffee." Helman also swore in his deposition that he never made any attempt to draw his gun on the officers.

The defendants argue that Helman's allegations and deposition testimony directly contradict the legal elements of Helman's Class D Felony conviction that Helman did use a weapon in resisting arrest, and thus, pursuant to *Heck*, his claims are barred. Apparently realizing his dilemma, in his response to the summary judgment motion, Helman provided an affidavit in which he states that he does not remember reaching for his gun, and that he did not make any attempt to draw his weapon, but that after he heard the flash bang device and gunshots it is possible that he instinctively reached for his weapon. Helman then argues that *Heck* does not apply because he instinctively went for his weapon after the officers unlawfully started shooting

4

him.

However, as the defendants note, Helman pleaded guilty to resisting an officer "lawfully engaged in the execution of the officer's duties". Ind. Code § 35-44.1-3-1. At his guilty plea hearing, Helman admitted that he did "knowingly or intentionally forcibly resist obstruct or interfere with a law enforcement officer **while the officer was lawfully engaged in the execution of the officer's duty** and while committing said offense did you attempt to draw a deadly weapon?" Clearly, Helman's new testimony that he may have attempted to draw his gun in response to police officers shooting at him for no justifiable reason directly undercuts Helman's guilty plea testimony that he resisted arrest by attempting to draw a deadly weapon when officers were "lawfully engaged" in executing their duties. As Helman's lawsuit directly undercuts his previous guilty plea and conviction, his claims are barred by *Heck*, and summary judgment will be granted to the defendants.

Even if *Heck* were not a sufficient basis upon which to grant summary judgment, the defendants have correctly argued that they were permitted to use deadly force in this instance because they were threatened. Intentional use of deadly force is assessed under the Fourth Amendment's objective reasonableness standard. *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003). Under this standard, reasonableness depends on the "facts and circumstances confronting [officers], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The reasonableness inquiry also "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The Fourth Amendment permits use of deadly force "where an officer has reasonable cause to believe that the suspect poses a danger of serious bodily harm, such as when the officer believes the suspect has a weapon or has committed a violent crime." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007). The Seventh Circuit has repeatedly affirmed summary judgment against plaintiff's claims against police officers when officers employed deadly force to protect themselves from a suspect with a gun. In *Maravilla v. United States*, 60 F.3d 1230 (1995), the court affirmed summary judgment in favor of the police when the court concluded that officers executing an arrest warrant reasonably employed deadly force against an individual, who was firing a gun out of a window. The court stated, "A reasonable officer executing a warrant in a home confronted by a person firing a gun would have certainly believed that he was at risk of serious harm." *Id*. at 1233. Moreover, a suspect's threatened use of a gun is sufficient threat to justify deadly force. *Henning*, 477 F.3d at 496.

The defendants argue that in the present case, the officers were permitted to use deadly force because they reasonably believed Helman posed a threat to their safety and the safety of others, and that two circumstances made their belief reasonable. First the officers knew that Helman was armed, a fact of which there is no dispute. Second, the officers fired at Helman only after observing him attempt to draw the weapon from his waistband. In fact, Helman swore under oath at his plea hearing that he both resisted law enforcement and attempted to draw a deadly weapon.

Although Helman now denies ever attempting to intentionally draw a weapon, it is well established that "a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of newly-

6

discovered evidence or the unmistakable need to clarify prior ambiguous statements." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.5 (7th Cir. 2008). Helman's recent affidavit does not explain an ambiguous statement or introduce newly discovered evidence, and thus his affidavit does not create a genuine dispute of fact about whether he resisted arrest or drew a deadly weapon prior to the shooting. Accordingly, summary judgment is appropriate on this basis also.

In any event, even if the defendants used excessive force, they are entitled to qualified immunity. Qualified immunity shields police officers from liability for actions that "they reasonably believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). "The defense provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Chelios v. Heavener*, 520 F.3d 678, 691 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Qualified immunity is assessed under a two-part test. First, "the facts, taken in the light most favorable to the plaintiff," must show that the police officers "violated a constitutional right." *Id*. Second, the plaintiff must show that the constitutional right was "clearly established at the time of the alleged violation." *Id*. A constitutional right is clearly established if there is "a clearly analogous case establishing a right to be free from the specific conduct at issue" or "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001); *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999).

The defendants contend that, at a minimum, the officers' conduct was well within the "hazy border between excessive force and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Seventh Circuit has held that a sufficient threat exists "when the officer believes the suspect has a weapon," *Henning*, 477 F.3d at 496, or when a "suspect threatens [an] officer."

7

*Scott*, 346 F.3d at 756. It is also well established that the officers in the present case did not need to wait until they had attempted to secure Helman's surrender through other alternatives in light of the rule that officers need not attempt "all feasible alternatives." *Plakas* 19 F.3d at 1148.

Helman has argued that there is a question of fact regarding *when* he reached for his weapon. However, as noted above, Helman cannot manufacture an issue of fact in an attempt to defeat summary judgment, and the sworn testimony of record is that Helman did "attempt" to draw a deadly weapon when officers were lawfully executing their duties. This testimony cannot be disputed by subsequent affidavit testimony. As the record is clear that under the circumstance of this case the officers were permitted to use deadly force, they are protected by qualified immunity.

For all the foregoing reasons, the defendants' motion for summary judgment will be granted.

## Conclusion

On the basis of the foregoing, the defendants' motion for summary judgment [DE 68] is hereby GRANTED.

Entered: October 12, 2012.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court